# MICHAEL A. YOUNG
ATTORNEY AT LAW
165 CHRISTOPHER STREET, SUITE 2D
NEW YORK, NEW YORK, 10014

TELEPHONE 212-242-4336  
FACSIMILE 212-924-4007

ELECTRONIC MAIL  
youngesqnyc@aol.com

December 19, 2012

The Honorable Brian M. Cogan  
United States District Court  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201  
By ECF

Re: Re: Gonzalez v. Hasty, 12 Cv. 5013 (BMC)

Dear Judge Cogan:

     I write in response to the Court's order dated December 13, 2012 directing plaintiff Gonzalez to file a supplemental letter describing (a) when his claims accrued; (b) which periods of time were tolled due to the fact that plaintiff was exhausting his administrative remedies; and (c) any other arguments in support of his contention that his claims are timely.

A. Plaintiff Gonzalez's claims accrued upon his release from MDC SHU on or about May 11, 2002.

     Where, as here, the complaint alleges a single continuing wrong or course of misconduct, both the federal and New York State courts have recognized that the application of the statute of limitations is governed by what is variously called the "continuing tort doctrine" or the "continuing violation doctrine." This doctrine has been held to be applicable to cases involving § 1983 complaints, as well as cases involving wrongful imprisonment or the intentional infliction of emotional distress. See eg. Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009); Pino v. Ryan, 49 F.3d 51 (2d Cir. 1995).

     The fact that appellant Gonzalez's complaint is founded in part on a claim of Eighth Amendment violation provides still further support for the application of the continuing violation doctrine. Such claims turn in large part on the extent of the violation and the seriousness of the injury. Atkins v. County of Orange, 372 F. Supp.2d 377, 397-98 (S.D.N.Y. 2005)[1]. Confinement in an isolation cell, in particular, is subject to Eighth Amendment scrutiny. Hutto u. Finney, 437 U.S. 678, 685 (1978), reh'g denied 439 U.S. 1122 (1979).

---

[1] Plaintiff Gonzalez set forth in his complaint the physical and psychological harm resulting from confinement in a prison segregation facility. See Complaint at ¶¶ 18, 26, 29.

The Honorable Brian M. Cogan
December 19, 2012
p. 2

As the Supreme Court explained in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002) and the Second Circuit confirmed in Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009), a continuing violation claim is timely and can challenge acts occurring outside the statute of limitations period so long as at least one act in that continuing violation took place within the statute of limitations period. Under the continuing violation doctrine, a plaintiff may link a number of discriminatory acts emanating from the same discriminatory animus, even though each act constitutes a separate wrong. See Provencher v. CVS Pharmacy, 145 F.3d 5, 14 (1st Cir.1998); Jensen v. Frank, 912 F.2d 517, 522 (1st Cir.1990). If the plaintiff can establish that link and can also show that at least one act in the series occurred within the limitations period, the suit may be considered timely as to all the acts. See Lawton v. State Mut. Life Assur. Co., 101 F.3d 218, 221-22 (1st Cir.1996); Kassaye v. Bryant College, 999 F.2d 603, 606 (1st Cir.1993).

As the Second Circuit made clear in Shomo, courts "don't want the plaintiff to sue before the violation is complete," or to bring separate lawsuits when a series of acts reasonably should be challenged as part of one claim." Shomo v. City of New York, supra, 579 F.3d at 182, quoting Heard v. Sheahan, 253 F.3d 316, 319-20 (7th Cir.2001).

Consequently, in cases such as this, the action does not accrue until the termination of the unlawful conduct. Shomo v. City of New York, supra, 579 F.3d at 181; Cornwell v. Robinson, 23 F.3d 694, 703-04 (2d Cir. 1994); Gomes v. Avco Corp., 964 F.2d 1330, 1333 (2d Cir. 1992)); see also Purdy v. Town of Greenburgh, 166 F. Supp. 2d 850, 863-64 (S.D.N.Y. 2001).

In the present case, the unlawful conduct did not terminate until plaintiff Gonzalez was released from MDC SHU on or about May 11, 2002. Plaintiff Gonzalez thereafter finished exhausting his administrative remedies on or about August , 2002, as he was required to do before filing his claim under the requirements of the Prison Litigation Reform Act, 42 U.S.C. 1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 85 (2006)[2]. He did so well within the time period allotted by Code of Federal Regulations for such procedures. See 28 C.F.R. §§ 542.14-18 which allows 160-230 days for exhaustion of grievances through the Bureau of Prisons Administrative Remedy Program.

As the Second Circuit explained in its decision in this case, the statute of limitations was tolled during the period that appellant Gonzalez was exhausting his

---

[2] The PLRA, 42 U.S.C. § 1997e(a) mandates that
"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."
This exhaustion requirement is mandatory for all prisoner lawsuits. Porter v. Nussle, 534 U.S. 516, 525 (2002).

The Honorable Brian M. Cogan
December 19, 2012
p. 3

administrative remedies. Gonzalez v. Hasty, 651 F.3d 318, 323-24 (2d Cir. 2011). Indeed, the Second Circuit indicated that even assuming that the MCC claims constituted a separate action, plaintiff Gonzalez was not required to even commence exhausting his administrative remedies until after he was released from the MCC SHU. Id. at 324, fn 4. Here, of course, he commenced exhausting his administrative remedies while he was still confined in MDC SHU, and completed that process in August, 2002. Consequently, the statute of limitations did not begin running until August, 2002, and the complaint which plaintiff Gonzalez filed on May 31, 2005 was well within the permissible three year period.

      The caselaw cited above - and in particular the Second Circuit's decisions in Shomo and this case - thus clearly establish that plaintiff Gonzalez's claims did not accrue until he was released from MDC SHU on or about May 11, 2002, and that the period between that date and August, 2002 was tolled while he finished exhausting his administrative remedies. Despite this, the defendants insist that the MDC claims in this case accrued on July 24, 2001, the date that plaintiff Gonzalez was first arrived at MDC SHU because that was the date on which plaintiff Gonzalez "knew or had reason to know of his claimed injury" (Def. ltr at p. 2). That claim is clearly wrong. The Second Circuit has unequivocally held that "the continuing violation doctrine is an 'exception to the normal knew-or-should-have-known accrual date.'" Shomo v. City of New York, supra, 579 F.3d at 181, quoting Harris v. City of New York, 186 F.3d 243, 248 (2d Cir.1999).

      The defendants nevertheless attempt to justify their position by taking a quote from the Second Circuit's decision in this case out of context. Pointing to the Second Circuit's comment that 'the applicable three-year statute of limitations is tolled only during that exhaustion period and not during the period in between the accrual of those claims and when Gonzalez began the administrative remedy process," the defendants insist that this quote somehow means that the "knew or should have known" test still determines the accrual date (Def.'s ltr at p.2). In fact, however, it means nothing of the sort. Rather, the Second Circuit was saying that if the MCC claims were not joined to the MDC claims by the continuing violation doctrine, then the MCC claims accrued on July 24, 2001, the date he was removed from MCC SHU, and any time which expired between that date and the date on which plaintiff Gonzalez initiated the administrative remedy which was exhausted in August, 2002 would not toll the statute of limitations.

      With regard to the MDC claims, however, plaintiff Gonbzalez began exhausting his administrative remedies before he was released from MDC SHU. Consequently, since his MDC SHU claims did not accrue until the date he was released from MDC SHU, there was no gap between the accrual of those claims and the date on which he began the administrative remedy process. Therefore, the statute of limitations commenced on the date of his release from MDC SHU but was tolled until August, 2002 because of his pending administrative remedies.

      The defendants also attempt to denigrate the continuing violation doctrine by quoting a statement in one of Judge Berman's decisions to the effect that the continuing

The Honorable Brian M. Cogan
December 19, 2012
p. 4

violation doctrine "is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances" (Def. ltr at p. 3).  First of all, that quote was from Judge Berman's 2007 decision, which was subsequently vacated by the Second Circuit[3].  More importantly, however, the Second Circuit has never said anything of the kind.  Judge Berman was merely quoting another district court decision.  To the contrary, as the above-cited cases establish, the continuing violation doctrine has been found by the Second Circuit to be fully applicable in circumstances which are indistinguishable from the present proceeding.

Moreover, at least with regards to the lead defendant - Warden Dennis Hasty - the continuing violation doctrine requires consideration not only of plaintiff Gonzalez's confinement at MDC SHU, but also his confinement in the MCC SHU.  The Second Circuit has repeatedly held that such consecutive confinements in SHU, even at different facilities must be considered in the aggregate.   Thus, in Giano v. Selsky, 238 F.3d 223 (2d Cir. 2001) , the Court stated,

> we find that Giano's periods of confinement at Clinton and Attica must be considered in the aggregate. As we recently suggested in Sims v. Artuz, 230 F.3d 14, 23-24 (2d Cir.2000), separate SHU sentences 'should be aggregated for purposes of the Sandin [v. Conner, 515 U.S. 472 (1995)] inquiry' when they constitute a sustained period of confinement. Id.; see also Sealey v. Giltner, 197 F.3d 578, 587-88 (2d Cir.1999) (aggregating two periods of SHU segregation).  We view such an aggregation as particularly appropriate here, where it is clear that Giano's segregation at Clinton was simply a continuation of his segregation at Attica. A review of the record indicates that the two periods of confinement were based on the same administrative rationale and that the conditions of Giano's confinement were, for all practical purposes, identical at both facilities. Under these circumstances, Giano's two sentences of administrative segregation must be considered cumulatively for purposes of the Sandin analysis...

Id., 238 F.3d at 226.

The majority in the Second Circuit's decision in the present case clearly found that the continuing violation doctrine applied at least to the events at each of the prisons separately, since it indicated that the statute of limitations did not begin to run as to the

---

[3] Although Judge Berman referred back to that quote in his 2012 decision, it was only in terms of narrative, describing what he had held in his 2007 decision.  He admitted in the next paragraph (at *2) that that decision was overturned by the Second Circuit.

The Honorable Brian M. Cogan
December 19, 2012
p. 5

events at MCC until, at the earliest, the date that plaintiff Gonzalez was transferred out of the MCC SHU and into the MDC SHU. Gonzalez v. Hasty, supra, 651 F.3d at 324, fn 4. It also held that the commencement of the statute of limitations as to the MCC confinement would be tolled by the time it took plaintiff Gonzalez to exhaust his administrative remedies after his removal from MCC SHU (Id.). However, it declined on the record then before it to decide whether the MCC and MDC SHU confinements could constitute a single continuing violation of plaintiff Gonzalez's rights:

> We decline to decide on this record, however, whether the continuing violation doctrine allows the two confinements to be aggregated in order to preserve MCC claims that might otherwise have been lost absent prolonged tolling, and to lengthen the period of confinement in SHU.

Id. at 321.

Chief Judge Jacobs in his concurrence, indicated however that the continuing violation doctrine did join the SHU confinements at both MCC and MDC at least with regards to defendant Hasty since Hasty was the Warden at both institutions during that period. Id. at 325.

Judge Berman, in his decision granting summary judgment as to the other MCC defendants, also expressly left open the question of whether the continuing violation doctrine applied to defendant Hasty's conduct at both institutions:

> The Court need not decide whether the continuing violation doctrine applies to Warden Hasty because he remains a defendant in this case. That is, Defendants appear to concede that Plaintiff's MDC claim against Hasty is not time-barred (see Defs. Reply at 9 ("Warden Hasty unquestionably took acts with respect to Plaintiff that are the subject of the instant complaint within the limitations period.")), and both parties agree that the remainder of this action should be transferred to the United States District Court for the Eastern District of New York .

Gonzalez v. Hasty, 2012 WL 4473689 (S.D.N.Y.) At *9.

With regard to the Second Circuit majority's desire for a fuller record on the issue of whether the two confinements can be joined under the continuing violation doctrine, the record has already been enlarged significantly by the defendants' recent concession that Hasty, while still the warden at MCC, and just weeks before he was to become warden at MDC, ordered plaintiff Gonzalez's transfer from MCC to MDC. That alone constitutes compelling proof that the entire period of SHU confinement at both institutions was a single continuing violation of plaintiff Gonzalez's rights orchestrated by defendant Hasty. Since most of the information relating to plaintiff Gonzalez's confinement at both institutions remains exclusively in the possession of the defendants, the record will

The Honorable Brian M. Cogan
December 19, 2012
p. 6

in all likelihood be further enlarged once plaintiff Gonzalez is permitted to discover those documents.

The defendants are also incorrect in insisting that "the Second Circuit has found that the continuing violation doctrine is inconsistent with the 'discovery rule,' which governs the date of accrual for a Bivens action" (Def. ltr at pp. 3-4). In support of this assertion, the defendants cite only Mix v. Delaware & Hudson Ry. Co., 345 F.3d 82, 88 (2d Cir. 2003) and Kronisch v. United States, 150 F.3d 112, 123 (2d Cir. 1998). First of all, Mix and Kronisch were Federal Tort Claim Act cases involving a specific injury, and as such clearly distinguishable from the continuing violation at issue here. More importantly, any question as to the applicability of the continuing violation doctrine to §1983 actions has now been definitively resolved in the affirmative by the Second Circuit's more recent decision in Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009).

For this reason, the defendants understandably bury their only reference to Shomo in a footnote (Def. ltr at p. 4, fn 6). Their attempts to distinguish Shomo in that footnote are unavailing. First, the defendants suggest that Shomo was limited to medical claims. Although Shomo was about deliberate indifference to medical needs of a prisoner, it by no means limited the continuing violation doctrine to medical cases. As the Second Circuit indicated in this case, that doctrine could, on a fuller record, even be used to join the plaintiff Gonzalez's SHU confinements at MCC and MDC. At a minimum, it served to join the actions of the MDC defendants during the period that he was confined to the MDC SHU.

Moreover, the defendants are simply wrong when they claim that plaintiff Gonzalez has not alleged an ongoing detention in violation of his constitutional rights. That is exactly what he alleged, and why the continuing violation doctrine is so appropriate to this case.

B. The period from May 11, 2002, when plaintiff Gonzalez was released from MDC SHU until August, 2002 when he finished exhausting his administrative remedies, tolled the running of the statute of limitations.

Under Shomo and the other authorities cited above, plaintiff's claims accrued on or about May 11, 2002 when he was released from MDC SHU. Under the Second Circuit's decision in this case, since he was by that date already engaged in exhausting his administrative remedies, the period from that date through August, 2002 when that process was completed was tolled for purposed of the statute of limitations. Consequently, his complaint, filed less than three years later on May 31, 2005 was timely.

For the above-stated reasons, as well as the defendants' prior concessions that plaintiff Gonzalez's claims as to the MDC defendants are timely (see plaintiff's letter to the Court dated December 6, 2012), plaintiff Gonzalez respectfully submits that his claims are timely.

The Honorable Brian M. Cogan
December 19, 2012
p. 7

      Thank you for your consideration of this matter.

                                               Respectfully submitted,

                                                          /s/
                                         MICHAEL A. YOUNG, ESQ

cc.: Rachel G. Balaban
     Assistant United States Attorney, EDNY