```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------  X
                                                            :
ESTEBAN GONZALEZ,                                           :    MEMORANDUM
                                                            :    DECISION AND ORDER
                              Plaintiff,                    :
                                                            :    12 CV 5013 (BMC)
             - against -                                    :
                                                            :
DENNIS W. HASTY, et al                                      :
                                                            :
                              Defendants.                   :
----------------------------------------------------------  X
```

**COGAN**, District Judge.

Plaintiff brings this action under Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999 (1971), for damages arising from his detention in the Special Housing Unit ("SHU") of the Metropolitan Detention Center ("MDC"). He claims that the warden, defendant Dennis Hasty, conspired or directed the other defendant MDC personnel to assign and keep him in the SHU, and not to hold or pretextually hold required periodic reviews of his special custody status. The case is before me on defendants' motion for summary judgment. I find that plaintiff's claim is time-barred.

## BACKGROUND

The relevant facts as developed in plaintiff's criminal cases and this case have been set forth in several decisions issued by judges in the Southern District of New York, where the case was originally commenced, and one in the Second Circuit, which remanded the action to the Southern District. See Gonzalez v. Hasty, 651 F.3d 318 (2d Cir. 2011); Gonzalez v. Hasty, No. 05 cv 6076, 2012 WL 4473689 (S.D.N.Y. Sept. 28, 2012); Gonzalez v. Hasty, No. 05 cv 6076,

2007 WL 914238 (S.D.N.Y. Mar. 27, 2007). To summarize, on February 28, 1999, plaintiff was in federal custody at the Metropolitan Correctional Center ("MCC") awaiting resentencing on a felon in possession charge when he repeatedly stabbed a fellow inmate with a "knife-like" object. He was placed under administrative detention in the MCC SHU, and later convicted of charges stemming from that assault. When he was ultimately sentenced on the felon in possession and assault charges, after several reassignments within the Southern District of New York and a remand by the Second Circuit, he received a total of 210 months' custody. It came out at sentencing that in addition to the assault, a shank had been found in his cell at another facility where he had been housed during the appeal of an initial sentence, and that plaintiff had assaulted another inmate at yet a different facility during that same period.

The warden at the MCC was defendant Dennis Hasty. He was reassigned from the MCC in Manhattan to the MDC in Brooklyn on August 13, 2001. About three weeks prior to that reassignment, on July 24, 2001, plaintiff was transferred to the MDC and immediately assigned to its SHU, thus moving from the MCC SHU to the MDC SHU. While in these two SHUs, plaintiff filed numerous administrative complaints, summarized in detail in Gonzalez v. Hasty, No. 05 cv 6076, (S.D.N.Y. Sept. 28, 2012), six of which challenged either his confinement or the conditions of that confinement in the SHUs. These requests were administratively exhausted and denied, the last one being denied on August 8, 2002. By that time, plaintiff had been released from the MDC SHU, either on April 15, 2002 or May 11, 2002 (the parties do not agree on the date).

Plaintiff commenced this action in the Southern District of New York more than three years later after his release from the MDC SHU, on May 31, 2005, alleging that his confinement in the two SHUs violated his First, Fifth and Eighth Amendment rights. Plaintiff named as

defendants Warden Hasty and various supervisory personnel from both the MCC and the MDC. Judge Berman dismissed the complaint as time-barred, but the Second Circuit, in the decision cited above, held that in computing the statute of limitations, the district court had to exclude the time periods during which plaintiff had pending administrative claims challenging his confinement in the SHUs. Since it was not clear from the record whether any portion of plaintiff's claim would survive that exclusion, the Circuit remanded the case to Judge Berman for further consideration.

On remand, Judge Berman held that the claims against the MCC defendants (other than Warden Hasty, who was both an MCC and an MDC defendant), were still time-barred even excluding the time plaintiff spent administratively exhausting his claim. He rejected plaintiff's argument that at least as to the MCC defendants, his claim did not accrue until his release from the MDC SHU on May 11, 2002. Rather, he held that the latest date on which plaintiff's claim could have accrued was the date of his first administrative complaint in which he alleged that his detention in the MCC SHU was improper – May 2, 2000 – because it was at that point, if not earlier, that plaintiff must have been "aware of the facts underlying the claim." See Gonzalez v. Hasty, No. 05 cv 6076, (S.D.N.Y. Sept. 28, 2012) (quoting Bakowski v. Kurimai, 387 F. App'x 10, 11 (2d Cir. 2003)). (Of course, plaintiff's proffered accrual date of May 11, 2002, would still leave the case having been filed beyond the three-year statute of limitations, but plaintiff argued that if one used May 11, 2002 as the accrual date, *and* excluded from the three years, as the Circuit had directed, the time during which his administrative challenges to SHU detention were pending, then his lawsuit had been filed within three years of the accrual date.)

In addition to rejecting plaintiff's proposed accrual date, Judge Berman noted that, at least as to the MCC defendants, the "continuing violation doctrine" would not save plaintiff's

3

claim, since none of those defendants was alleged to have committed any wrongful act within the statutory time period, and the continuing violation doctrine does not apply to any defendant who did not commit a wrongful act during the extended period. See Gonzalez v. Hasty, No. 05 cv 6076, 2012 WL 4473689 (S.D.N.Y. Sept. 28, 2012). Having dismissed the MCC defendants, Judge Berman transferred the case to this Court in the interests of justice.

Once in this Court, plaintiff filed an amended complaint against Warden Hasty and the MDC defendants (although the complaint continually refers to other, dismissed MCC defendants). His complaint of improper assignment or improperly delayed release from the MDC SHU contends that he should not have been assigned to the MDC SHU in the first place, at least without being advised of a specific reason or explanation, and that his status was not adequately reviewed periodically as required by Bureau of Prison regulations. This was done, plaintiff alleges, as a result of personal or racial animus of Warden Hasty and possibly other defendants against him.

## DISCUSSION

The issues before me are similar to those that Judge Berman decided: when did plaintiff's claim against the MDC defendants and Warden Hasty accrue, and how, if at all, is that affected by the continuing violation doctrine? I agree with the principle on which Judge Berman's decision is based – a claim accrues when a plaintiff has full knowledge of the material facts giving rise to his claim. The law is well-established on this point. See Pearl v. City of Long Beach, 296 F.3d 76 (2d Cir. 2002); Pinaud v. County of Suffolk, 52 F.3d 1139 (2d Cir. 1995). It is just as true for *Bivens* claims as any other kind of claim. See Kronisch v. United States, 150 F.3d 112 (2d Cir. 1998).

Under this test, plaintiff's claim against the MDC defendants and Warden Hasty accrued either upon his transfer to the MDC SHU on July 24, 2001 or very shortly thereafter. More than a year prior to that, on May 2, 2000, plaintiff had filed his first administrative challenge to his detention in the MCC SHU. The amended complaint contains no allegations that since that time, anything had changed or any event had occurred that might have lulled plaintiff into thinking that his transfer and assignment to the MDC SHU was proper. If he thought the facts did not support his confinement in the SHU in May, 2000, then he had even more reason to believe that his assignment to the MDC SHU after more than a year of additional SHU confinement in the MCC was also improper.

As to the continuing violation doctrine, plaintiff's argument is misplaced. Even assuming it can apply to *Bivens* actions, it does not apply to this *Bivens* action. The continuing violation doctrine arose in and is principally employed in Title VII hostile work environment cases. See Fitzgerald v. Henderson, 251 F.3d 345 (2d Cir. 2001). The scenario giving rise to that doctrine is that an employee may experience individual hostile workplace acts; no one act by itself is severe enough to constitute an adverse employment action under Title VII that would support a suit, but the acts collectively create a hostile work environment. Because it is the collected activities that create the claim, and none of those activities are separately actionable, the last hostile act can be used as the "look back" point for statute of limitations purposes. Indeed, it is well established that if an adverse employment action occurs, it cannot be used to "anchor" a hostile work environment claim made up of non-adverse employment actions that would otherwise be time-barred. See Patterson v. Cnty. of Oneida, 375 F.3d 206 (2d Cir. 2004). Thus, if a plaintiff is subjected to racially hostile remarks in the workplace, and more than three years later is denied a promotion on racially motivated grounds, the denial of the promotion cannot support the

5

continuing violation doctrine as to the hostile work environment claim because the denial of the promotion is an adverse employment action that is independently actionable.

Here, the very essence of plaintiff's complaint is that he should have never been assigned to the MDC SHU, or at least he should have been promptly returned to the general population. Plaintiff's claim is that his assignment from day one was part of a vendetta by Warden Hasty, using the other MDC defendants to implement it, and his rights were infringed by that assignment. If that is true, he had a claim at that point, and could have sued for his release or damages (subject to administrative exhaustion, of course). Under his theory, plaintiff's damages would have increased the longer he was kept in the SHU, and the evidence supporting his claim of illegal motive may have accumulated the longer he was held, but the claim of improper SHU detention was fully amenable to suit as soon as he was transferred into the MDC SHU and plaintiff could have sued at that point.

For this reason, plaintiff's reliance on Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009), is misplaced. That was a deliberate indifference to medical needs case, where prison doctors and administrative personnel deliberately or recklessly disregarded numerous medical recommendations that resulted in injury to the plaintiff over time. Deliberate indifference to medical needs may be the only aspect of prison conditions where the continuing violation doctrine has a place, but in any event, Shomo has no application here. This is because if federal prison officials miss a medical diagnosis or fail to provide necessary treatment, there is no constitutional impairment; there may be a Federal Tort Claims Act claim for medical malpractice, but medical malpractice, i.e., negligence, does not rise to the level of deliberate indifference. See Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) (citing Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285 (1976)). Rather, as Shomo demonstrates, only a prolonged

6

and repeated course of disregarding serious medical needs will rise to the level of reckless indifference that the Eighth Amendment prohibits. Like the hostile work environment claim in the Title VII context, it is the course of conduct itself over time that creates the constitutional claim.[1]

Because plaintiff had already complained about improper SHU confinement at the MCC, thus demonstrating his full knowledge of the facts giving rise to his claim, his claim for improper SHU confinement at the MDC arose at the time he was assigned there. As Judge Bianco held in Munsch v. Evans, No. 11 cv 2271, 2012 WL 528135 (E.D.N.Y. Feb. 17, 2012):

> Shomo did not indicate that the continuing violation theory is applicable to all Eighth Amendment claims. It merely extended the application of the continuing violation theory to deliberate indifference claims that were based on cumulative medical acts over time constituting, in their totality, a constitutional violation. That analysis has no application to the instant situation. There are no cumulative acts; rather, the challenged act is the imposition of the conditions in 2006 – a singular event.

Id. at *13. Plaintiff's claim similarly arises from a singular event – his assignment to the MDC SHU.

The arithmetic of plaintiff's confinement in relation to the commencement of this action is not in material dispute. Plaintiff entered the MDC SHU upon transfer from the MCC SHU on July 24, 2001. Thereafter, applying the Second Circuit's holding from the prior appeal of this case, there is an excludable period of no more than 174 days, and perhaps as little as 116 days, while plaintiff exhausted his administrative complaints about being in the SHU. He did not

---

[1] Of course, even in the Title VII context, it is possible that a single act, if sufficiently severe (e.g., sexual assault of an employee), may itself give rise to a hostile work environment claim. See Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 106 S. Ct. 2399 (1986). Similarly, an Eighth Amendment prison medical claim could arise from a single outrageous act (e.g., prison guards watching a prisoner having a heart attack and dying before them while taking no action). See Sealock v. Colorado, 218 F.3d 1205 (10th Cir. 2000). But I believe that in such cases, the continuing violation doctrine would have no place, as the wrongful conduct is immediately subject to suit and so the claim accrues at that point. See Barbaro v. U.S. ex rel. Fed. Bureau of Prisons FCI Otisville, 521 F. Supp. 2d 276 (S.D.N.Y. 2007).

commence this action until May 31, 2005. Not counting the excludable days, he filed this action three years and either 137 or 195 days after the date of his initial confinement in the MDC SHU. If his claim accrued on the day he entered the MDC SHU, or within either 137 or 195 days thereafter, this action was commenced beyond the three-year statute of limitations applicable in *Bivens* actions. See Kronisch v. U.S., 150 F.3d 112 (2d Cir. 1998).

Since I have found that plaintiff's claim is time-barred, I need not consider defendants' alternative argument that the amended complaint fails to state a claim.

## CONCLUSION

Defendants' motion to dismiss is granted. The Clerk is directed to enter judgment in favor of defendants, dismissing the amended complaint.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
       July 19, 2013